COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Willis and Fitzpatrick
Argued at Alexandria, Virginia


MARTIN JOSEPH REYNOLDS
                                        OPINION BY
v.        Record No. 0378-96-4   CHIEF JUDGE NORMAN K. MOON
                                      FEBRUARY 18, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                 Benjamin N. A. Kendrick, Judge

            Brendan Feeley for appellant.

            John H. McLees, Jr., Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


    Martin J. Reynolds appeals his conviction for assault and

battery.  Reynolds argues that the trial court erred in

permitting the Commonwealth to introduce evidence of Reynolds'

alleged other bad acts unrelated to the charge for which he was

tried.  Finding the probative value of the other bad acts

evidence outweighed its prejudicial effect, and because the

evidence was probative of Reynolds' motive and intent and was

sufficiently related in time and place to the act for which

Reynolds was convicted, we affirm.

    The victim, Hal Taylor, testified that on May 6, 1995, he

went to the Bad Habits Grill at 10:00 p.m. in Arlington,

Virginia.  Taylor had two drinks and attempted to leave at

approximately midnight.  In order to leave, Taylor needed to pass

through a narrow passageway between two bathrooms which was

obstructed by Reynolds and his friend of fourteen years, Mark

Newell.  Taylor testified that he asked, "[e]xcuse me, can I get by here," and Reynolds responded with a string of obscenities. Taylor stated that he shook his head and started to walk by but that Reynolds struck him in the back of the head, knocking him down.  Taylor stated that as he attempted to get up Reynolds struck him in the face with a chair, knocking him unconscious. When Taylor regained consciousness, he discovered that he had a severe cut across his cheek, requiring internal and external stitches.

Reynolds testified that as Taylor passed by Reynolds and Newell, Taylor acted belligerent and drunken toward both men. Reynolds and Newell stated that after exchanging words with Taylor for a moment or two, Reynolds told Taylor to "get the f___ out of here."  Reynolds said that Taylor got "right up in [his] face," and Reynolds pushed Taylor back.  Reynolds and Newell both testified that Taylor, not Reynolds, then grabbed a chair and raised it to strike Reynolds at which point Reynolds struck Taylor in the face several times.  Reynolds' witness, Robert Bainbridge, a self-employed contractor who worked with Reynolds' father in the construction business for ten years, also recalled seeing Taylor raise a chair to strike Reynolds.

David Johnson, another patron at the bar, testified that his attention was drawn to Taylor when he noticed Taylor backing into the barroom area, with his hands up in front of him, looking at Reynolds as he backed up.  Johnson stated he saw Reynolds pick up a chair and that he, Johnson, then turned to tell the bartender

to call the police. Johnson recalled that when he turned back, he saw the chair fall, and he saw Reynolds repeatedly punch Taylor as Taylor moved backwards and fell and that Reynolds continued beating Taylor even after Taylor was obviously unconscious.

The bartender testified that he observed Taylor either standing still or backing away from Reynolds and that Taylor was holding a chair in front of him. The bartender stated that Taylor was definitely not raising the chair up and that Reynolds went after Taylor, striking him repeatedly, even after Taylor was on the floor.

The owner of the bar testified that he first became aware of Reynolds when he noticed Reynolds hurriedly paying his check as his friends clapped him on the back and urged him to hurry and leave. The owner stated that he then saw Taylor lying on the ground bleeding profusely and that he, the owner, then stepped between Reynolds and the door in order to prevent Reynolds and his friends from leaving. Reynolds then pushed the bar owner back and cursed him. Other bar employees and regulars jumped in and detained Reynolds until the police arrived.

Arlington County Police Officer Goldman arrived and detained and later arrested Reynolds. Goldman testified that Reynolds told him that Reynolds had assaulted the victim because the victim was a homosexual who had been making advances toward Reynolds and one of his friends.

During cross-examination Reynolds denied having "egged on"

other patrons in the bar and later volunteered that he "wasn't there looking for fights." In rebuttal, the Commonwealth recalled David Johnson who testified that twenty to twenty-five minutes prior to the altercation he had been sitting at the bar with his friend, Mark Sullivan, when Johnson noticed Reynolds staring at him. Johnson stated that he asked Reynolds if there was a problem and Reynolds responded, "[i]f you don't look away, there's going to be a problem." Johnson further testified that when he saw Reynolds attack Taylor, he commented to Sullivan, "[t]hat's the same guy that just stared me down earlier . . . trying to start something with me." Johnson testified that he had never seen Reynolds or Taylor before.

Finding Johnson's testimony relevant because Reynolds was charged with malicious wounding and because the evidence was "being offered to show that the defendant went a gunning," the court admitted the rebuttal testimony.[1]

"Evidence of other independent acts of an accused is inadmissible if relevant only to show a probability that the accused committed the crime for which he is on trial because he is a person of bad or criminal character." Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985). However, such evidence is admissible when it is "relevant to an issue or element in the present case." Id. "[I]f such evidence tends to prove any of the relevant facts of the offense charged

---

[1] We assume, for purposes of this opinion, that Johnson's testimony is properly characterized as "other bad acts" evidence.

- 4 -

and is otherwise admissible, it will not be excluded merely because it also shows him to be guilty of another crime." Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962).

Accordingly, we have held that evidence of prior bad acts may be properly admitted

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

Lockhart v. Commonwealth, 18 Va. App. 254, 258-59, 443 S.E.2d 428, 429 (1994). "With respect to these exceptions, the test is whether `the legitimate probative value outweighs the incidental prejudice to the accused.'" Hawks v. Commonwealth, 228 Va. 244, 247, 321 S.E.2d 650, 652 (1984) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 897 (1983)).

In Satcher v. Commonwealth, the Supreme Court of Virginia affirmed a defendant's conviction for capital murder, rape, and related crimes, holding that evidence of another assault, robbery, and attempted rape committed by the defendant against another victim in the same area one hour earlier could have been admitted in order to prove the defendant's motive, intent, and to

show a "common plan, design or scheme." 244 Va. 220, 230-31, 421 S.E.2d 821, 828 (1992). In Tomlinson v. Commonwealth, we held that in the defendant's trial for shooting into an occupied dwelling, evidence of his shooting into a second dwelling later the same evening was properly admitted as it was relevant to show the defendant's plan, intent, or scheme. 8 Va. App. 218, 224, 380 S.E.2d 26, 30 (1989).

Satcher and Tomlinson are distinguishable from the cases cited by Reynolds because in both cases the courts determined that the probative value of the other bad acts evidence, as it pertained to the accused's motive or intent, outweighed the incidental prejudice to the accused. Such was not the case in Foster v. Commonwealth, 5 Va. App. 316, 362 S.E.2d 745 (1987), cited by Reynolds, in which we considered the admissibility of evidence of two separate allegations of rape at the accused's two respective trials for the alleged rapes. In Foster, we concluded that "[t]he fact that [the second victim] had been attacked nine days after the offenses under indictment had no bearing as to whether [the first victim] consented to the intercourse." Id. at 320, 362 S.E.2d at 747. Further, we did not consider the probative value of the other bad acts evidence as it related to the defendant's motive or intent because we found that although the evidence was purportedly offered to prove intent, the actual issue was the identity of the defendant. Id. at 323-24, 362 S.E.2d at 748-49. Accordingly, citing our prior holdings that "[i]f evidence of another crime is offered ostensibly to prove

intent, it is still not admissible if the actual issue is identity or commission of the act itself."  Id. at 323, 362 S.E.2d 749 (citations omitted).

In Brown v. Commonwealth, the other case relied upon by Reynolds, a defendant was charged with distribution of cocaine. 18 Va. App. 150, 442 S.E.2d 421 (1994).  A police officer observed the defendant receive cash from an unidentified man in exchange for some unknown item or items.  Twenty minutes later, the officer observed the defendant exchange money for drugs with another individual.  We concluded that the evidence of the first exchange was inadmissible in the defendant's trial for the crime committed in the second exchange because it "did not tend to prove an element of the crime with which the defendant was charged.  It tended to prove only his propensity to commit a crime, and was therefore inadmissible."  Id. at 152, 442 S.E.2d at 423.

In both Satcher and Tomlinson the Court found that the evidence of other bad acts was admissible for purposes of showing the defendant's intent or motive.  Similarly, here, the Commonwealth introduced evidence of other bad acts to prove motive or intent, not a general propensity to commit a crime. Like the evidence of other bad acts in Satcher and Tomlinson, here, the evidence was restricted to a narrow time frame, to events which occurred in the same location as the incident for which Reynolds was charged, and demonstrated conduct of a similar nature.  We have acknowledged that "[a]llowing evidence of other

crimes to show motive, intent or knowledge recognizes that the more often a person commits a similar incident with similar results, the more likely it is that the result was intended." Henderson v. Commonwealth, 5 Va. App. 125, 128, 360 S.E.2d 876, 878 (1987).

Reynolds' intent was directly at issue as it either buttressed or undermined his credibility.  Evidence that Reynolds, unprovoked, tried to start an altercation with Johnson twenty minutes before assaulting Taylor permitted the jury to draw a reasonable inference that when Taylor attempted to pass by Reynolds, Reynolds, unprovoked, found a new opportunity to exert his hostilities.  Reynolds' assertion that he was the victim of Taylor's hostility and that he acted strictly in self-defense is belied by evidence that only minutes earlier he attempted to pick a fight.

Thus, the exchange between Johnson and Reynolds was probative of Reynolds' intent at a specific time and place and thereby was not offered merely to demonstrate Reynolds' general propensity to commit crimes of violence.  The probative value of such evidence as it reflected upon Reynolds' motive or intent clearly outweighed its incidental prejudicial effect. Accordingly, we hold the trial court did not abuse its discretion in admitting the evidence.

Affirmed.