COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Chafin and Decker
Argued at Richmond, Virginia

UNPUBLISHED

JARVON LAVELL WALKER

              MEMORANDUM OPINION[*] BY
v.   Record No. 1051-13-2    JUDGE MARLA GRAFF DECKER
              MARCH 25, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

Lisa C. Francisco for appellant.

Aaron J. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Jarvon Lavell Walker (the appellant) was convicted of four counts of possession of a

controlled substance with intent to distribute after previously having been convicted of two or more

such offenses in violation of Code § 18.2-248. He was sentenced to twenty-seven years in prison

with three years suspended. On appeal, he contends that the trial court erred in denying his motion

to sever the charges against him because the requirements set forth in Rule 3A:6(b) were not

satisfied. Alternatively, he argues that justice required severing the charges. We disagree and

affirm the appellant's convictions.

I. BACKGROUND

In October 2011, the Southside Drug Task Force (task force) began working with Derrick

Walker (the informant) to make undercover drug purchases in the South Hill area of Mecklenburg

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

County.[1] The informant identified the appellant as a drug dealer and someone with whom he had been friends since the late 1990s but to whom he had not spoken since 2010. During his time working with the task force, the informant made ninety-seven drug buys from thirty-four people, including several purchases of crack cocaine from the appellant.

The informant purchased crack cocaine from the appellant four times between April 11 and April 24, 2012. Each time a purchase was arranged, the task force provided a driver or a police officer to take the informant to purchase drugs from the appellant. Each time, the informant was equipped with a recording device that was programmed to allow the task force to see and hear the informant during the transaction. The informant was also equipped with a GPS tracker that permitted investigators to monitor his physical location during each drug buy. Finally, following standard procedure, the officers searched the informant and the vehicle before and after each transaction.

On April 11, the informant contacted the appellant and arranged to buy one gram of crack cocaine from him. The appellant instructed the informant to meet him in the lawn and garden section of the Wal-Mart in South Hill. When the informant arrived, the appellant changed the meeting place for the exchange to inside the store. During a brief interaction, the informant gave the appellant fifty dollars in exchange for the cocaine. The Virginia Department of Forensic Science (DFS) analyzed the substance and determined it was 0.961 gram of crack cocaine.

Two days later, on April 13, the informant again contacted the appellant to purchase one gram of crack cocaine. The appellant suggested that they meet at the same Wal-Mart but later changed the location to a trailer park in South Hill. In a brief transaction, the appellant sold the

---

[1] Although the informant and the appellant share the same last name, the two are not related.

informant "shake" crack cocaine for fifty dollars.[2]  The DFS analyzed the substance and determined it was 0.845 gram of crack cocaine.

Six days later, on April 19, the informant again contacted the appellant to purchase one gram of crack cocaine.  The appellant arranged to meet the informant near a trailer park in South Hill.  In yet another brief transaction, the informant gave the appellant seventy dollars in exchange for cocaine.  The DFS analyzed the substance and determined it was 0.603 gram of crack cocaine.

Five days later, on April 24, the informant contacted the appellant to make what ended up being his last purchase of one gram of cocaine.  This time, the appellant instructed the informant to meet him at a trailer park in the LaCrosse area of Mecklenburg County.  In this brief transaction, the informant purchased seventy dollars of cocaine from the appellant while the two men sat inside the appellant's car.  The DFS determined the substance was crack cocaine weighing 0.773 gram.

In May 2012, a grand jury indicted the appellant on four separate counts of possession of a controlled substance with intent to distribute after having been convicted of two or more such offenses in violation of Code § 18.2-248.  Prior to trial, the appellant filed a motion to sever the counts in order to have four separate trials.  The trial court heard argument of counsel and denied the motion.  The appellant renewed his motion to sever on the morning of trial, and it was again denied by the court.  Following a jury trial, the appellant was convicted of all four offenses.

## II.  ANALYSIS

As a general principle, judicial economy favors joining multiple interrelated offenses for trial when it is possible to do so.  See, e.g., Fincher v. Commonwealth, 212 Va. 552, 553, 186 S.E.2d 75, 76 (1972).  Specifically, Rule 3A:10(c) states, "[t]he court may direct that an accused

---

[2] The record indicates that "shake" is comprised of crumbs of crack cocaine left over from the manufacturing process.

be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto."  Subject to these rules, "[t]he determination as to joinder rests within the sound discretion of the trial court . . . ."  Brown v. Commonwealth, 37 Va. App. 507, 514, 559 S.E.2d 415, 419 (2002).  The abuse-of-discretion standard, "'if nothing else, means that the trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 690 (2006) (citation omitted) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)) (internal quotation marks omitted).

The appellant did not consent to having his charges tried together, and consequently, we must first evaluate whether the requirements of Rule 3A:6(b) were satisfied.  This rule provides "the 'trial court [with] limited discretion to order an accused to be tried for more than one offense at the same time.'"  Purvis v. Commonwealth, 31 Va. App. 298, 304, 522 S.E.2d 898, 901 (2000) (alteration in original) (quoting Godwin v. Commonwealth, 6 Va. App. 118, 121, 367 S.E.2d 520, 521 (1988)).  The permissible conditions for joinder provided in this rule consist of three alternatives.  "Offenses may be joined if (1) the offenses are based on 'the same act or transaction,' (2) the offenses are based on 'two or more acts or transactions that are connected,' or (3) the offenses 'constitute parts of a common scheme or plan.'"  Cook v. Commonwealth, 7 Va. App. 225, 228, 372 S.E.2d 780, 782 (1988) (quoting Rule 3A:6(b)).

Here, the trial court ruled that joinder was appropriate.  At the conclusion of the hearing on the pre-trial motion to sever the four offenses, the court determined that the offenses "certainly [met] the requirements of Rule 3A:6[(b)] and [opined] I don't see that the ends of justice require

- 4 -

that we have separate trials." When the appellant renewed his motion before the trial began, the court again denied the motion.

A review of the alternatives set forth in Rule 3A:6(b) makes clear that the offenses do not satisfy the "same act or transaction" test because they took place on different dates and at different locations. See Purvis, 31 Va. App. at 305, 522 S.E.2d at 901 (holding that same act or transaction test not met if each offense was separate act occurring at different time and location). Additionally, the appellant's acts do not satisfy the second alternative provided by the rule because the facts relating to each purchase were not "so intimately connected and blended" as to be "connected" for purposes of Rule 3A:6(b). See Spence v. Commonwealth, 12 Va. App. 1040, 1044, 407 S.E.2d 916, 918 (1991) ("To meet the 'connected test,' the crimes should be 'so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety.'" (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970))).

The facts of this case, however, when applying the appropriate deference to the decision of the trial court, satisfy the third alternative set forth in Rule 3A:6(b), that the offenses constituted part of a common scheme or plan. More specifically, we conclude the four offenses were part of a "common plan."

In 2007, the Supreme Court of Virginia defined the terms "common scheme" and "common plan" for purposes of Rule 3A:6(b). Scott v. Commonwealth, 274 Va. 636, 645, 651 S.E.2d 630, 635 (2007). The Supreme Court explained that the terms "common scheme" and "common plan" were not synonymous and provided the following definitions:

> The term "common scheme" describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes.

> In contrast, the term "common plan" describes crimes that are related to one another for the purpose of accomplishing a particular goal. . . .

Id. at 645-46, 651 S.E.2d at 635-36 (citations omitted). The Court also explained that the terms "common scheme" and "common plan" are not always mutually exclusive and a series of crimes may exhibit both a "common scheme" and a "common plan." Id. at 646, 651 S.E.2d at 635-36. Accordingly, some cases discuss the presence of a common scheme *or* a common plan, while others conduct a combined analysis of common scheme *and* common plan. See, e.g., id. at 646-47, 651 S.E.2d at 636 (holding that the facts did not support a finding of a "common scheme" or a "common plan"); Traish v. Commonwealth, 36 Va. App. 114, 129-30, 549 S.E.2d 5, 12 (2001) (concluding the presence of a "common scheme" satisfied the requirements for joinder); Purvis, 31 Va. App. at 306-07, 522 S.E.2d at 902 (holding that the facts did not support a finding of a "common plan"); Yellardy v. Commonwealth, 38 Va. App. 19, 25, 561 S.E.2d 739, 742 (2002) (applying a combined analysis of terms "common scheme" and "common plan"); Cook, 7 Va. App. at 229, 372 S.E.2d at 782 (applying a combined analysis of terms "common scheme" and "common plan")

In this case, the four charges were related to one another to accomplish a particular goal and, as such, were part of the "common plan" that the appellant formulated to develop an ongoing buyer-seller relationship with the informant. The development of the relationship consisted of four sales of approximately one gram of crack cocaine within a time span of thirteen days. Once the informant made the initial contact to reestablish their relationship, the appellant seized the opportunity to create a return customer. He waited for the informant to contact him and then set a meeting place for the transaction. All four transactions were brief. Although the meeting place varied, the appellant often changed the location at the last minute. All of the sales occurred in and around the South Hill area of Mecklenburg County. On the occasion where the quality of the cocaine was poor, the appellant made assurances "that [the particular crack cocaine

the informant received] was the last [of that batch] for that specific time, but the next time [the informant] came back, [the appellant] would make up for it because it was so shaky or so powdery." The appellant followed through with his guarantee, and for the third and fourth purchases, the product did not consist of any "shake" crack cocaine. Additionally, although the street value for one gram of crack cocaine in Mecklenburg County was typically one hundred dollars, the appellant sold the crack he represented to the informant as being one gram for fifty dollars for the first two transactions and seventy dollars for the remaining two transactions. This price, which was clearly a discounted price, was so low that the informant discussed that fact with the task force before he made his first purchase from the appellant.[3] These facts support the existence of a common plan linking the offenses, as defined in Scott.

The appellant relies on this Court's decision in Spence to support his argument that the trial court abused its discretion by permitting the offenses to be tried together. The facts in this case, however, differ significantly from those in Spence. In that case, the defendant was charged with having sold cocaine to an undercover drug agent over the course of four months, with the

_____

[3] Investigators Mayor and Malone, as well as the informant, agreed that the purchase price of a gram of cocaine could vary depending upon the relationship between the parties and the availability of the drug in the area at a particular time. Although the informant attempted to purchase a gram each time, each quantity actually weighed less than one gram. Three of the times that the informant purchased crack, the appellant supplied it to him in a prepackaged plastic baggie corner, which one of the detectives testified was the way that crack was "[n]ormally" packaged for sale. On another occasion (the third purchase), when the informant received the smallest amount of crack, the cocaine was not prepackaged. Instead, the informant watched as the appellant simply broke off a piece of crack from a larger rock of the substance and gave him a piece of paper in which to wrap his purchase. The amount that the informant received ranged from a high of 0.961 gram (the first purchase) to a low of 0.603 gram (the unmeasured third purchase) and also included quantities of 0.845 gram (the second purchase) and 0.773 gram (the fourth purchase). Despite this gradual decrease in quantity and slight increase in price, the investigators described the appellant's initial pricing as "rock-bottom, bare-bones," and the "extreme low end" of typical prices in Mecklenburg County. The evidence supports a finding that the crack cocaine was attractively priced throughout the repeat sales in an apparent effort to retain a customer.

shortest period between sales being eleven days and the longest period being over two months.

Spence, 12 Va. App. at 1041-42, 407 S.E.2d at 916-17. This Court classified Spence's

statement, "if you need anything else, I will be here," as the mere assurance of a salesman that he

was available to sell additional product at any time. Id. at 1043, 407 S.E.2d at 918. Here, by

contrast, in order to further bait his repeat buyer, the appellant affirmatively sought to make up

for the poor quality of the product in a subsequent purchase. Further, there is no evidence that

the buyer in Spence ever received favorable pricing as an enticement to continue to purchase

drugs from the defendant, as was the situation in this case. Here, the appellant provided discount

prices to the returning customer which increased only after the customer continued to make

purchases.[4]

Additionally, and significantly, Spence was decided over sixteen years before Scott, in

which the Supreme Court provided separate definitions for "common scheme" and "common

plan" and explained that offenses need to satisfy only one of those definitions. Scott, 274 Va. at

644-45, 651 S.E.2d at 635-36. The Court in Spence did not differentiate between the two but,

instead, examined the facts under a combined "common scheme and plan" analysis. Thus, the

Spence Court did not consider whether the facts in that case satisfied the definition of a common

plan exclusive of a common scheme.

Because of these distinguishing factors, we hold that the facts in this case extended

beyond "multiple offenses of a similar nature committed by the same person." Spence, 12

Va. App. at 1043, 407 S.E.2d at 917. Instead, the acts here were part of a "'plan that tie[d] the

---

[4] We do not hold that basic similarities among transactions which are sometimes entirely within the control of the Commonwealth, such as closeness in time, geographical proximity, and quantity purchased, are sufficient, standing alone, to prove the existence of a common plan. Each case must be judged by the trial court, subject on appeal to review under an abuse of discretion standard.

offenses together and demonstrate[d] that the objective of each offense was to contribute to the achievement of a goal not obtainable by the commission of any of the individual offenses.'" Id. at 1044, 407 S.E.2d at 918 (quoting Godwin, 6 Va. App. at 122, 367 S.E.2d at 522).

Having concluded that the offenses were part of a "common plan" under Rule 3A:6(b), we must next determine whether, under Rule 3A:10(c), justice required that the appellant be provided four separate trials. Justice typically "requires separate trials where highly prejudicial evidence of one of the crimes is not admissible in the trial of the other." Long v. Commonwealth, 20 Va. App. 223, 226, 456 S.E.2d 138, 139 (1995). "However, such evidence is admissible when it is 'relevant to an issue or element in the present case.'" Reynolds v. Commonwealth, 24 Va. App. 220, 224, 481 S.E.2d 479, 481 (1997) (quoting Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985)). "'If such evidence tends to prove any of the relevant facts of the offense charged and is otherwise admissible, it will not be excluded merely because it also shows [the defendant] to be guilty of []other crime[s].'" Id. (quoting Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962)). "Exception often is made to show a common plan from which motive, intent or knowledge may be inferred." Godwin, 6 Va. App. at 123, 367 S.E.2d at 523. "'The responsibility for balancing the competing consideration[s] of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse.'" Ferrell v. Commonwealth, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990) (quoting Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990)). Thus, again, it is under this legal standard that this Court conducts its review.

To convict the appellant of possession with intent to distribute illegal narcotics, the Commonwealth was required to prove that "'the defendant was aware of the presence and character of the drugs, and that he intentionally and consciously possessed them.'" Merritt v. Commonwealth, 57 Va. App. 542, 556, 704 S.E.2d 158, 165 (2011) (quoting Andrews v.

Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975)).  In the instant case, the appellant's knowledge and intent regarding the cocaine were clearly in issue.

We have previously stated that "'[a]llowing evidence of other crimes to show motive, intent or knowledge recognizes that the more often a person commits a similar incident with similar results, the more likely it is that the result was intended.'"  Reynolds, 24 Va. App. at 226, 481 S.E.2d at 482 (quoting Henderson v. Commonwealth, 5 Va. App. 125, 128, 360 S.E.2d 876, 878 (1987)).  Because the evidence relating to each of the transactions helped establish that the appellant had the requisite intent to distribute the crack cocaine in Mecklenburg County and, similarly, the number of distinct transactions also helped establish that the appellant knew the nature and character of the substance he was distributing was crack cocaine, we cannot conclude that justice required each of the offenses to be tried separately.  While all evidence of other similar acts is likely to have some prejudicial effect on the jurors, we find that in instances like this, where the probative value of admitting each sale in the undercover operation into evidence aided in establishing intent and knowledge, its admission outweighs the potential prejudice associated with that evidence.

Further, in this case, efforts were made to ensure fairness and reduce any possible added prejudice.  The Commonwealth, during *voir dire*, asked potential jurors whether they could "separate the offense dates and separate the elements and weigh the evidence on each of those dates."  The Commonwealth asked, "Is there anyone who would have trouble saying I think the evidence is not good on this one, but it's okay on this one, so I'm going to find him guilty on all of them.  Would anyone have logic like that?"  When one juror explained that she might have difficulty with the required task and her inclination would be that "it's kind of all or nothing," she was dismissed by the court.  That juror was replaced with a juror who believed she was capable of determining whether the elements had been satisfied for each of the four drug transactions.  Thus,

the court and the Commonwealth made deliberate efforts to minimize the risk of any incidental prejudice that might result from joinder.

Additionally, because the case involved an undercover investigation, much of the same evidence would have been presented to the jury in the event the court had ordered four separate trials. With respect to the informant, some of that information includes: the informant's specific involvement with the task force, the number of controlled buys made by the informant, the informant's history with the appellant, the informant's criminal history, and how much the informant was paid for cooperating with the task force. With respect to members of the task force, some of that evidence includes: background information about the task force, the type of search performed before and after each drug purchase, and the terminology and pricing information for crack cocaine buys in Mecklenburg County. Given the significant overlap in evidence, principles of judicial economy also favor the trial court's decision to consolidate the offenses. See Fincher, 212 Va. at 553, 186 S.E.2d at 76 (holding that if joinder is appropriate and does not confound the defense or adversely affect the defendant's substantive rights, judicial economy is served by consolidating trials).

III. CONCLUSION

Applying the appropriate appellate standard of review to the very specific facts of this case, we conclude that the proof of a common plan to create a loyal, return crack cocaine customer provided the basis for trying these four offenses together and that proof of the multiple similar offenses was relevant to establish knowledge and intent regarding the sale of crack cocaine to the informant on each occasion. Consequently, we hold that the requirements of Rules 3A:6(b) and 3A:10(c) were satisfied and the trial court did not abuse its discretion in denying the appellant's motion to sever the four offenses.

Affirmed.