COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia

JAMES CARROLL DURRETTE

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1316-18-4                     JUDGE WESLEY G. RUSSELL, JR.
                                                    FEBRUARY 18, 2020

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        Louise M. DiMatteo, Judge

        Helen Randolph, Assistant Public Defender II, for appellant.

        Mason D. Williams, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        James Carroll Durrette was convicted by an Arlington County jury of two counts of

burglary and one count of grand larceny. One burglary was committed on September 17, 2015,

at the Dominion Arms Apartments, and the other burglary, as well as the related grand larceny,

took place on January 18, 2016, at the Cavendish, an apartment building.[1] Appellant contends

that the trial court erred by admitting "evidence of an unadjudicated bad act[, a burglary that was

committed in Fairfax County,] where it failed to show the presence of a common scheme,

prejudicing the jury to infer conformity with a general bad act." For the reasons that follow, we

affirm the judgment of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As of July 1, 2018, the grand larceny threshold has been raised from $200 to $500. See
2018 Va. Acts chs. 764 & 765 (amending Code § 18.2-95). The $200 threshold applies to
appellant because that was the relevant amount when he committed the larceny offense in 2016.

Jerry Fitzgerald pled guilty in connection with burglaries and thefts at the Dominion Arms Apartments, the River House Apartments, and the Cavendish, all located in Arlington County. He testified that appellant was his accomplice for the offenses. Fitzgerald testified that he and appellant broke into all three apartment complexes for the purpose of stealing money from the value transfer machine ("VTM") in each building.[3] In the course of his testimony, Fitzgerald provided commentary on video surveillance footage that the Commonwealth played for the jury.

*August 15, 2015 burglary at the River House Apartments*

The jury was shown surveillance video of an August 15, 2015 burglary at the River House Apartments, which are located in Arlington County. Fitzgerald testified that he pried open a window while appellant and another accomplice, Billy Carter, remained outside. Later, appellant and Fitzgerald returned to enter the building through the previously opened window. The video shows Fitzgerald covering the security camera with an umbrella; Fitzgerald testified that, while he was covering the camera, appellant broke into the VTM and stole money. The time-stamped video shows Fitzgerald at 2:20 a.m. and, with Fitzgerald obscuring another security camera with the umbrella, depicts two men leaving the building through a separate exit at 2:22 a.m. Fitzgerald testified that appellant gave him a "cut" of the money taken from the VTM.

---

[2] "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." Vasquez v. Commonwealth, 291 Va. 232, 236 (2016) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)).

[3] Pertinent here, a VTM allows a resident of an apartment building to deposit cash in exchange for credits on a laundry card, which, in turn, can be swiped to allow the resident to use the washers and dryers at the apartment building.

*September 17, 2015 burglary at the Dominion Arms Apartments*

The jury was shown surveillance video of a September 17, 2015 burglary at the Dominion Arms Apartments, and Fitzgerald provided commentary. He identified himself and appellant as they entered the building. Fitzgerald testified that he used a screwdriver to gain access to the lobby. Fitzgerald covered his face with a shirt, and appellant used a black hat and his shirt to cover most of his face, making it difficult to identify him. After entering the building, Fitzgerald covered an interior surveillance camera with a piece of paper. Fitzgerald and appellant left the building, but returned later. Because Fitzgerald and appellant eventually encountered a security guard, they left the building without damaging the VTM or obtaining any money from it.

*January 18, 2016 burglary at the Cavendish*

The jury was shown surveillance video of a January 18, 2016 burglary at the Cavendish. Fitzgerald testified that on January 18, 2016, he and appellant entered the Cavendish using a screwdriver to pry open the front door. Fitzgerald, wearing a disguise, disabled the surveillance camera in the laundry room where the VTM was located. According to Fitzgerald, after the camera was disabled, he and appellant used screwdrivers, prying tools, and a circular blade grinder to break into the VTM and obtain money from it. They left the building with the money.

*June 30, 2016 burglary at the Woodlake Towers Apartments*

Prior to trial, the Commonwealth filed a notice indicating that it would "move the [trial c]ourt to admit evidence of a Fairfax burglary sharing the same *modus operandi* as the charged offenses to prove the defendant's identity." Specifically, the Commonwealth sought permission to introduce video surveillance and other evidence demonstrating that Fitzgerald, appellant, and another accomplice burglarized a VTM machine on June 30, 2016, at the Woodlake Towers Apartments in neighboring Fairfax County.

In addition to its notice, the Commonwealth filed a memorandum asserting that evidence of the Woodlake Towers burglary was admissible under the *modus operandi* exception to the general prohibition on evidence of other criminal acts. Appellant filed a responding memorandum, arguing that "[t]he Fairfax . . . break in shares no idiosyncratic characteristic with the Arlington charges," and therefore, "there exists no common *modus operandi*" that would allow for the admission of the Woodlake Towers evidence.

The trial court held a hearing on the issue on March 1, 2018. The Commonwealth reiterated its written argument that the Woodlake Towers evidence was admissible to prove identity under the *modus operandi* exception; appellant argued that the crimes were not sufficiently idiosyncratic to fall within the exception. The trial court granted the Commonwealth's motion from the bench, stating that the evidence was admissible because "it's the same *modus operandi*." At no point in the proceedings below did the Commonwealth, the appellant, or the trial court reference the "common scheme" exception to the general prohibition on evidence of other criminal acts.

At trial, the jury was shown surveillance video of a June 30, 2016 burglary at the Woodlake Towers Apartments. Because the surveillance camera at the Woodlake Towers Apartments was hidden, the burglars did not cover it or take sufficient steps to mask their identities. Fitzgerald testified and confirmed that he, appellant, and Carter committed the burglary. The camera captured close-up images of appellant's face as he and Fitzgerald accessed the VTM. Fitzgerald testified that he, appellant, and Carter cut open the VTM with a circle grinder. Fitzgerald pled guilty in Fairfax County to those offenses.

The jury convicted appellant of committing burglary at the Dominion Arms Apartments on September 17, 2015, and committing burglary and grand larceny on January 18, 2016, at the Cavendish. The jury was unable to reach a verdict regarding the charges that appellant

- 4 -

committed burglary and grand larceny for the burglary at the River House Apartments on August 15, 2015.  Accordingly, the trial court declared a mistrial as to those charges.

This appeal follows.  In his sole assignment of error, appellant argues that the trial court committed reversible error by "permitting the Commonwealth to enter evidence of an unadjudicated bad act where it failed to show the presence of a *common scheme*, prejudicing the jury to infer conformity with a general bad act."  (Emphasis added).

## ANALYSIS

### I.  Standard of Review

In general, we review a challenge to a trial court's decision to admit evidence under the familiar abuse of discretion standard.  Massey v. Commonwealth, 67 Va. App. 108, 138 (2016).  Our resolution of this appeal, however, turns on the interpretation and application of Rules of the Supreme Court of Virginia.  Such an inquiry presents a question of law subject to *de novo* review.  Minor v. Commonwealth, 66 Va. App. 728, 738 (2016).

### II.  Rule 5A:12, Rule 5A:18, and the Limits of Appellate Review

One of the hallmarks of appellate *review* is that it is what it purports to be—a review.  As a general rule, appellate courts may consider only arguments actually made to and judgments actually rendered by the trial court.  Rules 5A:12 and 5A:18 implement this concept.

Rule 5A:12(c)(1) provides that a petition for appeal "shall list . . . the specific errors in the rulings below–or the issue(s) on which the tribunal or court appealed from failed to rule[.]"  Rule 5A:12(c)(1)(ii) explains that "[a]n assignment of error which does not address the findings, rulings, or failures to rule on issues in the trial court . . . from which an appeal is taken . . . is not sufficient."  Rule 5A:12(c)(1)(ii) also specifies the sanction for failing to assign error to what the trial court actually did, providing that "[i]f the assignments of error are insufficient, the petition for appeal shall be dismissed."  Thus, we are precluded from considering appellate arguments

that are not tied to the rulings of the trial court.[4] See Coleman v. Commonwealth, 60 Va. App. 618, 621 (2012).

While Rule 5A:12(c) limits an appellant to challenging what a trial court actually did, Rule 5A:18 generally limits an appellant to arguments that he actually made. Subject to limited exceptions not applicable here, Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling[.]" Thus, "Rule 5A:18 requires a litigant to make timely and *specific* objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented,'" Brown v. Commonwealth, 279 Va. 210, 217 (2010) (emphasis added) (quoting West v. Commonwealth, 43 Va. App. 327, 337 (2004)), and we "will not consider an argument on appeal which was not presented to the trial court," Le v. Commonwealth, 65 Va. App. 66, 73 (2015) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)).

Here, appellant's assignment of error asserts that the trial court erred in admitting "evidence of an unadjudicated bad act" under the "common scheme" exception to the general prohibition against evidence of other criminal acts. However, the trial court did not admit any evidence pursuant to the common scheme exception, expressly ruling that the evidence related to the unadjudicated burglary at the Woodlake Towers Apartments was being admitted pursuant to the *modus operandi* exception. Furthermore, no one—not the trial court, not the Commonwealth, and not the appellant—referenced in any way the common scheme exception in the proceedings below. Thus, on its face, appellant's assignment of error challenges a ruling that the trial court did not make with an argument that was not raised below in violation of both Rule 5A:12 and Rule 5A:18.

---

[4] As the rule makes clear, a party also may challenge a trial court's failure to rule on an issue, but this presupposes that the issue was raised by a party and placed before the trial court for a ruling.

Appellant, while acknowledging that the trial court expressly admitted the evidence under the *modus operandi* exception and did not reference the common scheme exception, argues that it is a distinction without a difference. He contends that the phrases are "synonymous," and therefore, despite the facial failure of the appeal to comply with Rules 5A:12 and 5A:18, the issue he seeks to appeal is properly before us. Accordingly, the viability of his appeal turns on the question of whether *modus operandi* and common scheme are, for practical purposes, one and the same.

### III. *Modus Operandi* Versus Common Scheme

The most obvious similarity between *modus operandi* and common scheme is that both represent exceptions to the general prohibition on the introduction of other crimes evidence in a criminal prosecution. The general prohibition and multiple exceptions can be found in Virginia Rule of Evidence 2:404(b), which provides, in pertinent part:

> [E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith. However, if the legitimate probative value of such proof outweighs its incidental prejudice, such evidence is admissible if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan.

We have been called upon to address both the general prohibition and its exceptions on many occasions. We repeatedly have listed the exceptions to the general prohibition as including circumstances where the prior bad acts are being offered

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; *(6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan*

- 7 -

> *where the other crime or crimes constitute a part of a general*
> *scheme of which the crime charged is a part.*

Kenner v. Commonwealth, 71 Va. App. 279, 290 (2019) (emphasis added) (quoting Quinones v. Commonwealth, 35 Va. App. 634, 640 (2001)); see also Castillo v. Commonwealth, 70 Va. App. 394, 415 (2019) (same); Reynolds v. Commonwealth, 24 Va. App. 220, 224 (1997) (same); Morse v. Commonwealth, 17 Va. App. 627, 631-32 (1994) (same); Lafon v. Commonwealth, 17 Va. App. 411, 417 (1993) (same); Sutphin v. Commonwealth, 1 Va. App. 241, 245-46 (1985) (same).

That we repeatedly have listed *modus operandi* and common scheme as separately numbered items in the list of exceptions demonstrates that the concepts are not the same, but rather, constitute distinct exceptions to the general prohibition on the admission of other crimes evidence. If they were the same, there would have been no need to list and number them separately. Such a conclusion also flows from the separation of the two by the coordinating conjunction "or" in those listings; if they were the same, no such separation would be necessary. See Smoot v. Commonwealth, 37 Va. App. 495, 501 (2002) (recognizing that "phrases separated by a comma and the disjunctive 'or,' are independent"); Parker-Smith v. Sto Corp., 262 Va. 432, 439 (2001) (recognizing that the separation of items in a statutory list by commas and the conjunction "or" meant those items represented "different things" (internal quotation marks and citation omitted)); Gilbert v. Commonwealth, 47 Va. App. 266, 271 (2005) (recognizing that terms separated by the "disjunctive 'or'" indicates that the terms are distinct).

Our conclusion that they are distinct exceptions is not based solely on numbering and rules of grammar. We previously discussed the substantive difference between the two exceptions in Henderson v. Commonwealth, 5 Va. App. 125 (1987). We explained that the common scheme exception applies

> where the other crime or crimes constitute a part of a general scheme of which a crime charged is part[ and] is appropriate where a prior criminal act or acts tend to show a system or uniform plan from which *motive, criminal intent or knowledge* may be inferred. Allowing evidence of other crimes to show motive, intent or knowledge recognizes that the more often a person commits a similar incident with similar results, the more likely it is that the result was intended.

Id. at 128 (internal quotation marks and citations omitted). We contrasted this with the *modus operandi* exception used to prove a criminal agent's identity, which we explained was "based on a different principle." Id. Specifically, the *modus operandi* exception is premised upon "the probability that a person who performs one act is the person who also performed another distinctively similar act. For this probability to exist the criminal acts must be so distinctive as to indicate a *modus operandi*." Id. (internal quotation marks and citations omitted). From these distinctions, we concluded that the exceptions were substantively different. Id. at 129.

Our consistent conclusion that the two exceptions are different is fatal to appellant's appeal.[5] Because they are different, appellant's assignment of error that the trial court erred in admitting evidence under the common scheme exception violates Rule 5A:12(c)(1)(ii) in that it

---

[5] Despite our having consistently treated the exceptions as different and distinct, appellant argues that the Supreme Court's decision in Scott v. Commonwealth, 274 Va. 636 (2007), requires us to conclude that the exceptions are synonymous. We find appellant's reliance on Scott misplaced. The issue in Scott was not the admission of evidence under one of the "other crimes" exceptions, but rather, was the Supreme Court's first opportunity to "define[] the term 'common scheme or plan' in the context of Rule 3A:6(b)" regarding joinder of offenses for trial. Id. at 644-45. In crafting a definition of "common scheme or plan" for purposes of the joinder rule, the Supreme Court analogized to evidence of other crimes cases referencing both the common scheme and *modus operandi* exceptions. Id. at 645. The fact that the Supreme Court analogized to such cases does not render "common scheme" and "*modus operandi*" identical or synonymous for all purposes. This is borne out by Scott itself, wherein the Supreme Court, having analogized to other crimes evidence cases for both the definition of common scheme *and* common plan, "observe[d] that the terms 'common scheme' and 'common plan' are not synonymous." Id. In short, although concepts may be related sufficiently that they may be better understood by analogy to one another, drawing such an analogy does not render the concepts identical or synonymous. Accordingly, the distinctions we previously have drawn between the common scheme and *modus operandi* exceptions remain valid after Scott.

does not address the ruling of the trial court, which was that the evidence was admissible under the *modus operandi* exception.  Furthermore, because the arguments made in the trial court were addressed to the *modus operandi* exception and no one mentioned the common scheme exception, appellant's appellate arguments related to the common scheme exception were not raised in trial court as required by Rule 5A:18.  As a result, the issue appellant raises on appeal is not properly before us.  Accordingly, the judgment of the trial court must be affirmed.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>