**Norfolk**

DWIGHT LUTHER COOK

v.

COMMONWEALTH OF VIRGINIA

No. 0412-86-1

Decided October 4, 1988

COUNSEL

G. Wilson Nelligar for appellant.

M. Katherine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.** — This is an appeal of three convictions of third-offense concealment arising from a jury verdict. The defendant contends that the trial court erred (1) in refusing to sever the three offenses for trial; (2) in admitting into evidence certified copies of conviction orders showing that a person with his name and birth date had previously been convicted of concealment; and (3) in admitting into evidence a "mug shot" of an accomplice. We conclude that the trial court did not err and affirm the convictions.

All three offenses occurred in Virginia Beach. They occurred about thirty minutes apart, between approximately 8:30 and 9:30 p.m., at three separate 7-Eleven stores.

The defendant and the same accomplice committed each of the offenses. Both were identified by a clerk at each of the stores and were arrested at the third store by a police officer who had been notified to be on the look out for them. The defendant did not challenge the identification; instead, he contended that the evidence did not demonstrate concealment.

At the first store, the defendant and his accomplice entered the store together. While one approached the clerk and asked her about coffee, the other walked over to a cigarette display and put something inside his coat. The two men left together and drove off in a tan automobile with a ragged vinyl top. The clerk found six cartons of Kool cigarettes missing from the display where the second man had been standing. She reported the incident to the police by telephone, giving them a description of the two men and the car, including its license plate number. She also telephoned another store a block away, and, while she was describing the incident to the clerk at that store, two men fitting her description arrived at that location.

When the two men entered the second store, one went to one side of the counter and one to the other. Immediately afterwards, the clerk noticed a cigarette display of approximately forty packages of Kool cigarettes was missing. She confronted the defendant and asked him if he saw someone take the display. He responded, "No." She noticed the left side of his coat bulging and again confronted him saying, "I think you got it." He again responded negatively but went further away from her, close to the location of a

cereal display, and bent over. He then called out to the other man saying, "Let's go," and they left without buying anything. After they left, the clerk found the cigarette display behind the cereal display where she had seen the defendant bend over. She also called the police and reported the incident.

The third offense occurred shortly thereafter at another 7-Eleven located on the same street as the second store. The defendant entered the store with his accomplice and started talking to the clerk about ice cream while his companion was in the back of the store. As he started to walk out, a police officer who had been alerted to be on the look out for their automobile entered the store with his gun drawn and told them to stop. The man who had been in the back of the store did not stop but kept walking to the back of the store. The clerk heard something drop and hit the floor, and the police officer, who followed him to the rear of the store, saw him pull cartons of cigarettes from under his coat. He arrested the two men and found a garbage bag containing cartons of cigarettes in their automobile.

## SEVERANCE

Prior to trial, the defendant moved to sever the three offenses. The motion was denied. It was renewed by the defendant on the morning of trial and again denied by the trial court.

■ Although there is no restriction on a trial court's discretion to order separate trials, it may only order an accused to be tried for more than one offense at the same time if certain requirements are met. Rule 3A:10(b). First, justice must not require separate trials; second, the offense must meet the requirements of Rule 3A:6(b), or the accused and the Commonwealth's attorney must consent to the offenses being tried together. Rule 3A:10(b).

■ The requirements of Rule 3A:6(b) consist of three alternatives. Offenses may be joined if (1) the offenses are based on "the same act or transaction," (2) the offenses are based on "two or more acts or transactions that are connected," or (3) the offenses "constitute parts of a common scheme or plan." Rule 3A:6(b).

In this case the first requirement was not satisfied. The three offenses of concealment were not based on "the same act or transaction." Each offense was a separate act or transaction taking

place at a different location and at a different, although closely related, time.

However, the offenses were based on "two or more acts or transactions" that were "connected." They were similar offenses committed by the same persons, one immediately after the other, in close geographical proximity to each other. They were connected by time, place, method and perpetrators. *See Goughf v. State*, 232 Ga. 178, 179-81, 205 S.E.2d 844, 845-46 (1974).

Furthermore, the three offenses also constituted "parts of a common scheme or plan." The circumstances of the offenses — they were similar offenses, committed, one immediately after the other in the same geographical area, by the same persons, driving the same vehicle — were sufficient to permit the trial court to conclude that they were part of a common plan.

The circumstances of these offenses demonstrate that they were not simply multiple offenses of a similar nature committed by the same people. In addition to being similar crimes committed by the same people in the same geographical area, these offenses were committed one immediately after the other, each within thirty minutes of the previous one. This timing manifests a single plan common to all three offenses: to steal cigarettes from these three, or perhaps more, convenience stores. Thus, two of the three alternative requirements of Rule 3A:6(b) were met.

Even if the requirements of Rule 3A:6(b) are met, joinder is not permitted unless "justice does not require separate trials." The defendant's motion for severance suggested that justice required separate trials by asserting that evidence of one offense would prejudice the jury during the trial of another offense. This result, however, might occur in any case where one offense is tried with another.

█ In this case, evidence of one larceny would have been admissible in the trial of the other larcenies. Although generally evidence of other crimes is not admissible as evidence of guilt in another crime, *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970), exception is made where the purpose is to show a common scheme or plan from which motive, intent or knowledge could be inferred. *Minor v. Commonwealth*, 213 Va. 278, 280, 191 S.E.2d 825, 827 (1972); *Sutphin v. Commonwealth*,

1 Va. App. 241, 246, 337 S.E.2d 897, 899 (1985). In this case the defendant's intent, not his identity, was contested. Each of the clerks at the three 7-Eleven stores identified the defendant and his accomplice as the men who entered their stores on the night in question. Their car was observed at two of the stores, and they were physically apprehended by the police at the third store. Rather than identity, the issue of this trial was whether the actions of a defendant and his accomplice were done with an intent to conceal cigarettes. *See Henderson v. Commonwealth*, 5 Va. App. 125, 129, 360 S.E.2d 876, 878 (1987). Even defense counsel's few questions about identity during cross-examination were designed to test the witnesses' ability to recall the actions to conceal cigarettes, not the identity of the perpetrators of the crime.

Therefore, evidence of each of the larcenies would have been admissible in the trial of the others to show intent. Consequently, no undue prejudice occurred by the joint trial, and justice did not require separate trials.

## ADMISSIBILITY OF CONVICTION RECORDS

The Commonwealth offered into evidence two certified copies of court orders that showed that a person with the same name and birth date as the defendant had been twice, previously convicted of concealment. The trial court admitted the records into evidence over the objection of defense counsel. The defendant asserts that the certified copies of the conviction orders were inadmissible because the Commonwealth failed to prove that he was in fact the person named in the conviction orders.

Identity of names carries with it a presumption of identity of person, the strength of which will vary according to the circumstances. *Blair v. Rorer's Administrator*, 135 Va. 1, 25, 116 S.E. 767, 776, *cert. denied*, 262 U.S. 734 (1923). In this case, authenticated conviction records bore the defendant's exact name and birth date. Courts in many other jurisdictions have held that identity of the name of a defendant and the name of a person previously convicted is prima facie evidence of identity of person and, absent contrary evidence, supports a finding of such identity. *See Paterchik v. United States*, 400 F.2d 696 (9th Cir. 1968), *cert. denied*, 395 U.S. 982 (1969); *Rodriguez v. United States*, 292 F.2d 709 (5th Cir. 1961); *Higgins v. State*, 235 Ark. 153, 357

S.W.2d 499 (1962); *Jacobs v. United States*, 58 App. D.C. 62, 24 F.2d 890 (1928); *Jenkins v. United States*, 146 A.2d 444 (D.C. 1958); *Hardrick v. State*, 96 Ga. App. 670, 101 S.E.2d 99 (1957); *Green v. Commonwealth*, 413 S.W.2d 329 (Ky. Ct. App. 1967); *State v. Wyckoff*, 27 N.J. Super. 322, 99 A.2d 365 (1953); *Tipton v. State*, 160 Tenn. 644, 28 S.W.2d 635 (1930).

Because the name of the defendant in each of the two certified conviction orders was the same as the defendant's name and because the orders bore his birth date, they were properly admitted by the trial court.

## *ADMISSIBILITY OF ACCOMPLICE'S "MUG SHOT"*

Over the objection of defense counsel, each of the Commonwealth's witnesses was shown a "mug shot" of the co-defendant, James Albert Johnson, and asked to identify him. Every witness but one identified the pictured man as the defendant's accomplice. In the first instance, the Commonwealth was permitted to introduce the "mug shot" of the accomplice on redirect examination after defense counsel had questioned that witness' identification of the two men. The photograph was then used during the direct examination of four subsequent witnesses.

■ "The admission of photographs is a matter resting within the sound discretion of a trial court," *Gray v. Commonwealth*, 233 Va. 313, 342, 356 S.E.2d 157, 173 (1987), and the court's decision will be upheld unless an abuse of discretion is shown. *See Lugo v. Joy*, 215 Va. 39, 41, 205 S.E.2d 658, 660 (1974). But it is always essential to the right to introduce a photograph in evidence that it have a relevant and material bearing upon some matter in controversy at the trial, and the party offering such evidence should give proof of its relevancy to the issue before the jury. *Wright v. Kelly*, 203 Va. 135, 141, 122 S.E.2d 670, 675 (1961).

■ In *Johnson v. Commonwealth*, 2 Va. App. 447, 345 S.E.2d 303 (1986), this Court held that the use of a "mug shot" of a *defendant* would not constitute reversible error if three conditions were met:

(1) The Government must have a demonstrable need to introduce the photograph;

(2) The photographs themselves, if shown to the jury, must not imply that *the defendant* has a prior criminal record; and

(3) The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

*Id.* at 454, 345 S.E.2d at 307 (emphasis added). The Court adopted this tripartite test from *United States v. Harrington*, 490 F.2d 487 (2d Cir. 1973), which also concerned admissibility of a *defendant's* "mug shot."

Admissibility of the "mug shot" of an *accomplice* is one of first impression in Virginia, but it presents the same concern that underlies the *Harrington* test for admissibility, that is, concern for possible prejudice to the defendant. In applying the *Harrington* test to this case, we hold that the defendant was not unduly prejudiced by admission into evidence of a "mug shot" of his accomplice and affirm the trial court.

First, the Commonwealth had a demonstrable need to introduce the photographs. Defense counsel questioned a witness' memory by questioning her identification of the two men. Showing her and the other witnesses the "mug shot" of Johnson was necessary to verify their ability to recall and identify the perpetrators.

Second, the photograph itself did not imply the *defendant* had a prior criminal record. The "mug shot" was a photo of Johnson, not the defendant, so it did not imply in any way that the *defendant* had a prior criminal record.

Finally, because the "mug shot" was of an accomplice and not the defendant, the third prong of the *Harrington* test is inapplicable. Since the "mug shot" was unmasked, it was clearly evident that the accomplice had previously been accused of violating the law. That fact does not necessarily lead to any implications that prejudice the defendant. Unlike the defendant's "mug shot" in *Johnson*, the *accomplice's* "mug shot" with identifying numbers and a date printed on it did not necessarily lead the jury to conclude that the *defendant* had a prior criminal record. The source and implication of the photograph is therefore irrelevant. We further note that if the third *Harrington* criterion were relevant, the manner in which the photograph was introduced at trial did not

draw particular attention to the fact that it was a "mug shot." There is no evidence that there were any comments or actions in connection with the "mug shot" that could have led the jury to infer that there was something especially damaging or suspicious about the photograph itself. *See Harrington*, 490 F.2d at 495. The record indicates that when the photograph was first offered, the debate over the propriety of its admission into evidence took place in a bench conference after the jury had been excused from the courtroom. Furthermore, when it was presented to witnesses in front of the jury, the Commonwealth's attorney referred to the photo simply as a "photograph marked Commonwealth's Exhibit 1." Because the "mug shot" of the accomplice had some bearing on the witnesses' identification of the perpetrators and because we find no abuse of discretion, we affirm the trial court's decision to admit the photograph into evidence.

In summary, we conclude that the trial court did not err in trying the three offenses together since justice did not require separate trials and since two of the three criteria of Rule 3A:6(b) were present. Nor did the court err in admitting certified copies of conviction orders since they bore the defendant's exact name and birth date. Finally, we also hold that the trial court did not err in admitting a "mug shot" of the defendant's accomplice since the photograph was not more prejudicial than probative under the *Harrington* test adopted by this Court in *Johnson v. Commonwealth*. For the foregoing reasons, we affirm the rulings of the trial court.

*Affirmed.*[1]

Baker, J., and Hodges, J., concurred.

---

[1] Other issues raised by Cook on this appeal have no precedential or public value, and, therefore, are considered and disposed of in an unpublished memorandum opinion filed with the clerk of this court from whom it is available upon request.