COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, O'Brien and Russell
Argued at Salem, Virginia


JAMES LELIN SALMONS

v.       Record No. 0473-15-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
FEBRUARY 23, 2016


FROM THE CIRCUIT COURT OF BATH COUNTY
Humes J. Franklin, Jr., Judge

David B. Davis for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


James Lelin Salmons, appellant, was convicted by a jury of committing aggravated sexual

battery against G.A. between January 1, 2006 and December 31, 2006 and aggravated sexual

battery against A.M. on or about October 14, 2006. On appeal, he contends the trial court erred in

denying his motion to sever the charges into two separate trials. For the reasons that follow, we

agree with appellant, reverse the convictions, and remand for new trials if the Commonwealth be so

advised.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below." Smallwood

v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v.

Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). This principle requires us to

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

So viewed, the evidence established that appellant lived with Michelle Ryder and her two children from 2004 until March of 2007. On October 14, 2006, appellant attended a birthday party for Ryder's son at a bowling alley. Ms. Ryder's daughter, G.A., and her friend A.M. were also at the party. After the party, G.A. and A.M. returned to G.A.'s house for a sleepover. Later that evening, the girls fell asleep on the floor of G.A.'s bedroom. Appellant then entered the room and took A.M. into the bathroom. According to A.M., appellant sat her on the edge of the "cupboard," pulled down her pants and placed his fingers inside her vagina. She kept telling him to stop, but he did not. Finally, he put her pants back on and she returned to the bedroom. Appellant told her that he would hurt her if she told anyone what he had done. At trial, more than eight years after the incident, she testified that she was seven or eight years old at the time and that she remembered the date it occurred because she was at the birthday party on October 14, 2006.

Appellant also sexually assaulted G.A. sometime after October 14, 2006 when she was eight years old. G.A. was in the living room of her home when appellant told her to come into his bedroom. Her mother was at work and her brother was home, but she didn't know where he was. Appellant "put his finger into [her] vagina and put his face in [her] vagina." She told him to stop because it hurt, but he did not do so. She left his bedroom and returned to her room. Afterward, appellant threatened G.A. that if she told anyone, "it won't be good for you."

G.A. first told her mother about the assault in November of 2013 after having a conversation about it with her cousin. After appellant appeared uninvited at Ms. Ryder's home

- 2 -

the following July, G.A. spoke to A.M. about what appellant had done to her. This discussion

prompted A.M. to tell Ms. Ryder that appellant also had assaulted her.

The Commonwealth charged appellant regarding each incident and sought to try both

cases in one proceeding. Appellant moved the court to sever the charges, arguing that the

incidents were not part of a common scheme or plan and that justice required separate trials. The

court denied appellant's motion, finding that the incidents were part of a "common scheme."

In the midst of jury deliberations, the jury sent a note to the trial court. The note

indicated that the jury had reached a verdict as to one of the incidents, but was deadlocked as to

the other. Upon questioning by the trial court, the jury revealed that, on the deadlocked charge,

the last vote had been "five to seven." The trial court then essentially gave the jury the Allen

charge. After further deliberations, the jury returned unanimous verdicts against appellant on

both charges.[1]

This appeal followed.

ANALYSIS

Rule 3A:10(c) provides that "[t]he court may direct that an accused be tried at one time for

all offenses then pending against him, if justice does not require separate trials and (i) the offenses

meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney

consent thereto." Where, as here, a defendant does not consent to having his charges tried together,

a court must evaluate whether the requirements of Rule 3A:6(b) are satisfied. Pursuant to that rule,

---

[1] Appellant argues that the fact that the jury initially convicted regarding one incident and split almost evenly on the other is strong evidence that the ultimate conviction regarding the second incident likely was caused by the jury's belief that if he committed the first offense it was more likely that he committed the second—the very problem that Rule 3A:6(b) is designed to prevent. Appellant, however, concedes that this supposition cannot be used to demonstrate error in the decision to join the cases because the information only became available well after the decision on joinder had to have been made. Rather, appellant argues it simply demonstrates that the error, if any, was not harmless.

- 3 -

offenses may be tried together "if (1) the offenses are based on 'the same act or transaction,' (2) the offenses are based on 'two or more acts or transactions that are connected,' or (3) the offenses 'constitute parts of a common scheme or plan.'" Cook v. Commonwealth, 7 Va. App. 225, 228, 372 S.E.2d 780, 782 (1988) (quoting Rule 3A:6(b)).

Subject to these rules, "[t]he determination as to joinder rests within the sound discretion of the trial court . . . ." Brown v. Commonwealth, 37 Va. App. 507, 514, 559 S.E.2d 415, 419 (2002); see also Walker v. Commonwealth, 289 Va. 410, 415, 770 S.E.2d 197, 199 (2015). The abuse of discretion standard, "if nothing else, means that the trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation omitted) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)). Although this standard is at least nominally deferential to the trial court's determination, the Virginia Supreme Court recently made clear that a trial court's determination that the specific facts of a particular case constitute a "common scheme" or "common plan" necessarily requires an interpretation of Rule 3A:6(b), and thus, represents a "question of law" subject to *de novo* review. Walker, 289 Va. at 415, 770 S.E.2d at 199.[2]

### Common Scheme

As noted above, the trial court joined the cases for trial based on its finding that the two incidents were part of a "common scheme." Distinct from a "common plan," id. at 415 n.3, 770 S.E.2d at 199 n.3 ("'common scheme' and 'common plan' are separate and distinct, but not mutually exclusive"), "a 'common scheme' connotes a particular act done multiple times in a

---

[2] Although Walker dealt with the "common plan" portion of Rule 3A:6(b) as opposed to the "common scheme" portion, the Supreme Court's reasoning and rationale in Walker dictate our resolution of the issues before us.

similar way" and the "similarity between the offenses [must be] sufficiently distinctive," id. at 418 n.4, 770 S.E.2d at 201 n.4. In Scott v. Commonwealth, 274 Va. 636, 651 S.E.2d 630 (2007), the Supreme Court held that "[t]he term 'common scheme' describes *crimes that share features idiosyncratic in character*, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes."[3] Id. at 645, 651 S.E.2d at 635 (emphasis added). Thus, for separate crimes to constitute a "common scheme," it is not enough that the crimes share the same elements, but rather, they must share distinct characteristics that distinguish the crimes from the charged offenses generally.

The Commonwealth offers many similarities between the two incidents in this case in its effort to establish that the crimes were part of a "common scheme." We review the proffered similarities in turn.

The Commonwealth stresses that both victims were eight years old at the time of the crimes. While true, this similarity, under the facts of the case and the crimes charged, does not constitute an idiosyncrasy sufficient to support a "common scheme." After all, appellant was charged in both incidents with violating Code § 18.2-67.3(A)(1), which elevates sexual battery to aggravated sexual battery when the "[t]he complaining witness is less than 13 years of age . . . ." Accordingly, the fact that the victims were younger than thirteen years old is an element of the offense.

Nothing in the record suggests that the fact that both victims were eight years old at the time of the crimes is anything more than happenstance. No evidence suggests that appellant was predisposed to eight year olds or sought out these victims because of their specific age. At argument, the Commonwealth acknowledged that this similarity was of limited value, conceding that it still would be arguing "common scheme" even if one of the victims had been nine years old

---

[3] Although not required, joinder under Rule 3A:6(b)'s "common scheme" provision is often utilized when there is a question regarding the identity of the perpetrator. The Commonwealth concedes that identity was not an issue in this case.

and the other was eight years old.  In short, on this record with only two instances to compare, the fact that the victims were both eight years old does not rise to the level of idiosyncrasy sufficient to constitute a common scheme.[4]

The Commonwealth notes that, in both instances, appellant "threatened both victims[, instructing each] not to tell anyone what happened, [and] saying he would 'hurt' them and it 'would not be good for' them."  While the crimes had this in common, such a statement by an adult perpetrator to a child victim is not idiosyncratic.  Rather, it is commonplace in crimes of this nature for the victim to be told something similar, a fact that the Commonwealth acknowledged at argument when it conceded it was unaware of any instance when an adult perpetrator told a child victim to do otherwise.

The Commonwealth also stresses that both the victims were female.  Although some predators may seek out victims of either sex, it is hardly idiosyncratic for a criminal to focus his sexual crimes against only one of the sexes.  Given that the criminal behavior in both cases was digital penetration of the vagina, it was a necessity, not an idiosyncrasy, that the victims be female.

The Commonwealth next offers that, in each offense, appellant "did not use a weapon, but rather took advantage of the victims' young ages, the element of surprise, and isolation to accomplish the offense."  Once again, although the crimes have these features in common, the features would be common with many, if not most, cases of an adult male committing aggravated sexual battery on a victim less than thirteen years of age.  It would be the unusual case that did not involve isolation or surprise.  Furthermore, given the disparity in age and size between an adult

---

[4] We recognize that there are other cases where only two incidents could constitute a common scheme.  For example, if there was evidence that a predator had a specific attraction to victims of a specific age, a class of two might suffice to establish a common scheme.  Similarly, we acknowledge that, if there were many more than two victims to compare, a similarity we find to be insufficient here might become sufficient in such a case.

defendant and his minor victims, it is unremarkable when no weapon is used in cases prosecuted pursuant to Code § 18.2-67.3(A)(1). Simply put, these features are common to many, if not most, violations of Code § 18.2-67.3(A)(1), and therefore, do not rise to idiosyncrasies for the purposes of finding a common scheme under Rule 3A:6(b).

The Commonwealth also argues that the crimes were both committed in the same location—a trailer. The trailer, however, was appellant's residence. Although we previously have considered location as a factor in determining whether crimes were part of a common scheme, see Yellardy v. Commonwealth, 38 Va. App. 19, 25-26, 561 S.E.2d 739, 742-43 (2002) (holding the fact that the crimes all occurred in the same park was a factor in concluding that the crimes were part of a common scheme or plan),[5] the location in this case strikes us as unremarkable. The fact that a sexual predator uses his residence as the location of his crimes on two occasions simply does not rise to an idiosyncrasy for the purposes of the common scheme requirement of Rule 3A:6(b).

The Commonwealth recognizes that none of the proffered similarities between the crimes is, in and of itself, sufficient to find that they are part of a common scheme. Rather, the Commonwealth argues that a common scheme can be divined by viewing all of the similarities together. While aggregation of common factors can lead to a finding of a common scheme, id. at 25, 561 S.E.2d at 742, the common factors offered by the Commonwealth here are insufficiently idiosyncratic to trigger Rule 3A:6(b)'s "common scheme" provision. Accordingly, the trial court

---

[5] In Yellardy, our finding that the crimes were part of a common scheme or plan rested on more than just the location of the crimes. In addition to the robberies occurring in James River Park, we found that the defendant's common scheme or plan was "to confront and rob single men . . . during lunchtime by threatening them with a rock, and when prosecuted, to assert that the victims confronted him with offers of homosexual sex." 38 Va. App. at 25, 561 S.E.2d at 742. The unusual weapon and the unusual defense, coupled with the recurrent location, allowed us to conclude that the robberies were part of a common scheme or plan. Id. at 26, 561 S.E.2d at 743.

erred in concluding that the crimes were part of a common scheme and in allowing the cases to be tried together.

## Connected Offenses

Although the trial court rested its joinder decision on its conclusion that the crimes were part of a common scheme, the Commonwealth argues that we should affirm on the alternative ground that the crimes were sufficiently connected to permit joinder. Essentially, the Commonwealth, citing many of the same reasons it argues that the crimes were part of a common scheme, argues that the crimes were connected. Specifically, the Commonwealth relies heavily on the crimes occurring in similar places, at similar times, and in similar manners.

We again find this argument unpersuasive. Nothing about the incidents suggests that either offense caused, allowed, or was in any way related to the other offense. If the facts of this case permitted joinder on the grounds of connectedness, then virtually any instance where the same defendant was charged with committing the same offense in a jurisdiction within a twelve-month period[6] would allow for joinder, rendering the common scheme and common plan prongs nullities. Accordingly, we reject the Commonwealth's alternative ground for affirmance.

## Harmless Error

Although the Commonwealth does not expressly argue that any error committed by the decision to join the cases was harmless, "Code § 8.01-678 makes harmless-error review required in *all* cases." Commonwealth v. Swann, 290 Va. 194, 200, 776 S.E.2d 265, 269 (2015) (internal quotation marks and citations omitted). In cases such as this, if we are

> sure that the error did not influence the jury, or had but slight
> effect, the verdict and judgment should stand . . . . But if one

---

[6] On brief, the Commonwealth correctly notes that the evidence at trial demonstrated that the offenses occurred within a two-month time period. Although that was the evidence at trial, the indictments allowed for a much larger range, with one indictment alleging the offense occurred "on or about October 14, 2006" and the other indictment alleging that the other offense occurred sometime "between January 1, 2006 and December 31, 2006."

> cannot say, with fair assurance, after pondering all that happened
> without stripping the erroneous action from the whole, that the
> judgment was not substantially swayed by the error, it is
> impossible to conclude that substantial rights were not affected. . . .
> If so, or if one is left in grave doubt, the conviction cannot stand.

Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (citations omitted).

Although the evidence of each offense at trial may have been sufficient to sustain the conviction related to each offense if each had been tried alone, we harbor serious concerns that trying the cases together allowed the jury to conclude that, because it had determined that appellant had committed one of the offenses, it was more likely that he had committed the other. Because such an inference is the very problem Rule 3A:6(b) is intended to address, we cannot say that the erroneous decision to join the cases for trial was harmless.

### Rule 3A:10(c)

Appellant also argued that, pursuant to Rule 3A:10(c), the trial court erred in joining the cases for trial because justice required that he be tried separately for each offense. Having found that the trial court erred in joining the cases pursuant to Rule 3A:6 and that such error was not harmless, we need not reach this argument. Walker, 289 Va. at 419, 770 S.E.2d at 201.

### CONCLUSION

For the reasons stated, we find that the trial court erred in joining the cases for trial and that such error was not harmless. Accordingly, we reverse appellant's convictions and remand for new trials if the Commonwealth be so advised.

Reversed and remanded.