COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, AtLee and Raphael
Argued at Williamsburg, Virginia

WILLIAM EVERETT WARREN

v.      Record No. 0348-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
FEBRUARY 21, 2023

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

Richard G. Collins (Collins & Hyman, P.L.C., on brief), for
appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

William Everett Warren appeals his convictions, following a bench trial, for attempted

first-degree murder (Code §§ 18.2-26, 18.2-32), use of a firearm in the commission of a felony

(Code § 18.2-53.1), maliciously shooting into an occupied building (Code § 18.2-279),

destruction of property (Code § 18.2-137), reckless handling of a firearm (Code § 18.2-56.1),

and violent felon in possession of a firearm (Code § 18.2-308.2). Warren contends that the circuit

court abused its discretion when it admitted inadmissible hearsay and that the evidence is

insufficient to support his convictions.

BACKGROUND

On appeal, when considering the legal sufficiency of the evidence, "we review the evidence

in the 'light most favorable' to the Commonwealth" as the prevailing party in the circuit court.

---

* Pursuant to Code §17.2-413, this opinion is not designated for publication.

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (citing *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)). In this light, the evidence adduced at trial established the following.

On December 5, 2020, Shannon Lee and Warren, her live-in boyfriend of eight months, had been arguing for a couple days about her talking to her ex-boyfriend. Around noon on December 5, Warren told Lee to stay away from him and stated in a text message, "if u r crazy enough to come here dont bring u kid in because I'm going to kill u. IM TELL U ON EVERYTHING I LOVE DONT COME AROUND ME. IM GOING TO KIL."

Warren was inside Lee's residence when Lee arrived home that evening. Lee remained outside for about an hour hoping that Warren would calm down. Lee and Warren exchanged text messages during this time. Warren again told Lee over text message that he was going to kill her. When Lee finally entered the home, Warren and Billy, Warren's cousin, were in the living room.[1] Warren appeared to be very agitated. Lee stood in the kitchen while Warren continued to berate her and threaten to shoot and kill her.

Eventually, Lee left the kitchen and walked to her bedroom, adjacent to the kitchen.[2] Warren followed and continued to threaten to kill her. Lee sat on the end of her bed next to the doorway and asked Warren to leave. Initially he refused; then he walked back into the living room out of Lee's view. Several seconds later Lee heard a gunshot. She looked up and saw Billy

---

[1] Billy's last name was never disclosed at trial.

[2] Lee's residence is a trailer home. She described the layout as, first one enters the home through the living room. From the living room one could proceed to the kitchen. After the kitchen is a small laundry room to the right, and a bedroom that leads to a bathroom.

standing in the kitchen, shaking. She ran into the living room and found Warren on the couch with a purple and black handgun on the floor right next to him. Lee grabbed the gun and ran out of the house with Billy. Lee explained that she owned the handgun that she retrieved from the floor. She testified that she stored the gun, "clip," and bullets in separate places around her bedroom and bathroom.

Lee and Billy drove around for several hours while Warren asserted, via text messages, that he would not leave her residence. He continued to threaten her. Because Warren refused to leave Lee's home, Lee stayed in a hotel overnight. Lee returned home the next day. It appeared that no one was inside, so she peaked in the door. At that point she smelled a strong chemical odor inside the residence. Lee called the police.

James City County Officer Kristal Lair responded to Lee's report of damaged property. Upon arrival, Lee directed Lair into the residence. Lair discovered that the television, lizard terrarium, a table, cabinets, and mirrors had been spray-painted. "Ho lives here" was written in spray paint on kitchen cabinets. "[F]ucking bitch" and "this should have killed u" with an arrow pointing to a bullet hole in the wall were scrolled in spray paint on the bathroom mirrors. Upon closer inspection, Lair saw daylight through the bullet hole in the bathroom wall. A shell casing was found on the table in the living room next to where Warren was sitting on the couch when Lee left the house.

After photographing the scene, Lee showed Lair a purple and black firearm in a vehicle. Later testing of the firearm and the casing found on the table confirmed that the casing had been fired from that weapon, as shown in Commonwealth's Exhibit 2. Finally, Lee shared with Lair screenshots of text messages she had received from Warren after the shooting.[3] These included "3

---

[3] Defense counsel objected to the screenshots of the text messages coming into evidence; he asserted that they were hearsay. His stated reason for the objection was because Lee was "speculating as to who is sending the text message." The screenshots showed the text

feet to the right and u be die.  U getting high," and "I fucking hate u I want to kill u so bad."  These text messages are also shown on the Verizon record entered into evidence without objection.

Destiny Warren, Warren's daughter, testified that she received text messages from her father on December 6, 2020.  In those text messages Warren stated, "I fucked up baby real bad.  I love u so much be better then me."  When Destiny asked what happened, Warren stated, "I lost it I shot at her I'm sorry I told her to leave me alone just couldn't do it bitch try to mind fuck me I lost it."  When Destiny asked if Warren used a gun and who he shot, Warren stated, "Yup I didn't shot her close I should have killed her . . . It not ur problem it's on me I fucked up.  Shannon."  When asked if the bullet had hit Lee, Warren responded, "No I didn't I should have."[4]

At the conclusion of the Commonwealth's case, Warren moved to strike the evidence, which the circuit court denied.  Warren then presented a stipulation of Lee's prior statements at the May 21, 2021 hearing, relating that she was arguing with Billy on the date of the offense as well.  The circuit court denied Warren's renewed motion to strike the evidence.

The circuit court stated its finding of fact on the record.  First, regarding proof that Warren was a prior convicted violent felon, the court noted the certified copy of the prior felony conviction order and considered Warren's testimony under oath regarding his identifiers and the indictment,

_____

conversation with a contact saved as "Will" next to a phone number.  When asked if she had communicated with anyone else on this number, Lee testified that sometime in the past she had received text messages from "maybe his friend" texting from Warren's number, stating Lee needed to pick him up.  Lee testified that Warren gave her this number to store in her phone, that she regularly communicated with Warren on this number, and that every time someone calls from this number it is Warren with whom she speaks, and she recognizes his voice.  The circuit court allowed the screenshots into evidence and said it would assign weight to Lee's testimony regarding communications with other people using the same number, and subject to cross-examination.

Also, Verizon business records were admitted into evidence, without objection, and showed the disputed text conversation between this same number and Lee's phone number.  Lee testified that the Verizon records show the text conversations she had with Warren on December 5 and 6.

[4] Destiny testified to the phone number she used to communicate with Warren, that Warren gave her the number, that she communicates with Warren on this number using text message and phone calls, and that she had saved this contact number as "Father."  It is the same number Lee used to communicate with Warren.

- 4 -

finding that he is the same individual named in that order. Turning to factual findings on the other issues, the circuit court found that prior to the gunfire, Lee was sitting on a part of her bed exposed to the bedroom doorway to the kitchen. Warren possessed an operable firearm. He directed the firearm at Lee from the living room and fired it. After the gun fired, Lee looked up and saw Billy with no weapon in hand. Lee exited the bedroom and saw Warren sitting on the couch with the gun at his feet and a casing was next to him. She grabbed the firearm and left the home. Billy left with her, so he was not the person who damaged the property. Warren put his "signature" on the home with spray paint. The circuit court expressly rejected Warren's hypothesis of innocence that Billy shot at Lee, finding, "That doesn't make any sense," given that Warren texted his daughter that he shot at Lee. Warren was initiating and receiving text messages from his phone, which he had before, during, and after the incident on December 5. Considering the text messages between Warren and Lee, text messages between Warren and his daughter, Lee's testimony, and the physical evidence, the circuit court found that Warren had intended to kill Lee and convicted him of all charges.

ANALYSIS

I. ADMISSIBILITY OF TEXT MESSAGES

Warren first argues that the circuit court erred in admitting the screenshot of text messages introduced as Commonwealth's Exhibit 13 because there was a lack of sufficient foundation that they included statements made by Warren and were therefore inadmissible hearsay.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Adjei v. Commonwealth*, 63 Va. App. 727, 737 (2014) (alteration in original) (quoting *Beck v. Commonwealth*, 253 Va. 373, 384-85 (1997)). A reviewing court can conclude that "an abuse of

discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "[B]y definition," however, a circuit court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Hearsay evidence "'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Atkins v. Commonwealth*, 68 Va. App. 1, 7-8 (2017) (quoting *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999)); *see also* Va. R. Evid. 2:802. "It is well established . . . that an out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay." *Bloom v. Commonwealth*, 262 Va. 814, 820 (2001).

"To meet the party admission exception to the rule against hearsay, the Commonwealth must first establish that the hearsay statement was in fact made by the party, in this case, the appellant." *Atkins*, 68 Va. App. at 8; *see* Va. R. Evid. 2:901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what the proponent claims."). "This principle holds true universally and applies equally to statements made over the telephone, through text messages, by emails, or using social media such as Twitter." *Atkins*, 68 Va. App. at 8 (citing *Bloom v. Commonwealth*, 34 Va. App. 364, 370 ("Messages received over the internet are admissible against the sender if the evidence establishes the identity of the sender."), *aff'd*, 262 Va. 814 (2001).

"The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Bloom*, 262 Va. at 821 (quoting *Witt v. Commonwealth*, 215 Va. 670, 674 (1975)). "Although the type of evidence used to prove the identity of the person making the statement may vary based in part upon the medium used to convey the message, the governing legal standard is the same—proof by a preponderance of direct evidence, circumstantial evidence, or a combination of both." *Atkins*, 68 Va. App. at 9. "Further, it is well established that '[t]he completeness of the identification goes to the weight' afforded 'the evidence rather than its admissibility,' with the responsibility of determining the threshold question of admissibility resting with the trial court." *Id.* (quoting *Armes v. Commonwealth*, 3 Va. App. 189, 193 (1986)).

The record supports the circuit court's finding by a preponderance of the evidence that the phone number appearing in the screenshot of Lee's phone belonged to Warren and that he authored and sent the text messages from that phone number, as shown in Commonwealth's Exhibit 13. Lee and Destiny both testified that Warren gave them that phone number and that they each regularly communicated with him via text message and phone calls from that number.

This evidence satisfies the foundational requirement of proving by a preponderance of the evidence that Warren authored and sent the challenged text messages from his cell phone. Thus, the circuit court did not abuse its discretion in concluding that the Commonwealth sufficiently authenticated the text messages to render them admissible for consideration as a party admission.

## II-VII. SUFFICIENCY OF THE EVIDENCE

In assignments of error two through seven, Warren asserts that the evidence was insufficient to support his convictions. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in

- 7 -

original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, [t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

II. Warren contests the sufficiency of the evidence to support his conviction of attempted first-degree murder. He asserts that the evidence failed to establish he was the person who fired the gun in Lee's residence. He also asserts that the Commonwealth failed to exclude the reasonable hypothesis that Billy fired the weapon. Warren also contends that the evidence was insufficient to establish that he intended to kill Lee.

## A. Criminal Actor

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). In proving the identity of a criminal actor, the Commonwealth may rely on circumstantial evidence. *See Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019)

(alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Therefore, circumstantial evidence may prove identity when "all the circumstances of time, place, motive, means, opportunity and conduct concur in pointing out the accused as the perpetrator of the crime." *Schlimme v. Commonwealth*, 16 Va. App. 15, 18 (1993) (quoting *Potts v. Commonwealth*, 12 Va. App. 1093, 1097 (1991)).

The evidence presented in this case supports the circuit court's factual finding that Warren was the criminal actor. Lee testified that she and Warren had been arguing all day, and text messages between the pair corroborate her claim. Prior to the shooting Warren had threatened to kill Lee, as evidenced in the text messages and Lee's testimony. After Lee heard the gunshot, she looked up and observed Billy shaking in the kitchen. Lee then entered the living room, where she found Warren sitting on the couch with her handgun on the floor by his feet. A spent shell casing was on the table next to where he was sitting. Lee immediately grabbed the gun and fled with Billy. Testing confirmed that the purple and black handgun was operable and the shell casing found on the table had been expelled from that firearm.

After the incident Warren continued to text Lee and referred to the shooting. Further, Warren disclosed to Destiny via text messages that he had shot at Lee, but missed, and wished he had killed her. A reasonable fact finder could conclude that Warren possessed the firearm, aimed, and fired it in Lee's direction while he was in the living room.

B.  Intent to Kill

"To prove the crime of attempted murder two essential elements must be established. The specific intent to kill the victim must be shown and this must be coupled with evidence of some overt but ineffectual act in furtherance of this purpose." *Hargrave v. Commonwealth*, 214 Va. 436, 437 (1974).  "The use of a deadly weapon, standing alone, is not sufficient to prove the specific intent required to establish attempted murder." *Id.*

"Determining intent is 'generally a question for the trier of fact.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)).  "Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances.  It is a state of mind which may be shown by a person's conduct or by his statements." *Hargrave*, 214 Va. at 437; *see also Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989) ("Premeditation and formation of an intent to kill seldom can be proved by direct evidence.  A combination of circumstantial factors may be sufficient.").

Lee asserts that there is only speculation that he harbored intent to kill, which is insufficient to support his conviction.  However, based on the facts in this record, a reasonable fact finder could conclude that Warren intended to kill Lee.  Before the shooting, Warren stated via text message that he was going to shoot and kill Lee.  When Lee entered the home, Warren reiterated that message.  The evidence shows that Warren shot in Lee's direction as she sat on the end of her bed.  Warren admitted afterwards to his daughter that he had, in fact, shot at Lee.  The evidence also supports a finding that Warren circled the bullet hole in the wall of Lee's home and painted, "this should have killed u." *See Epperly v. Commonwealth*, 224 Va. 214, 232 (1982) (stating fact finder may properly consider defendant's lack of remorse in deciding whether premeditation and deliberation exist in first-degree murder charge); *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) ("The statements and conduct of an accused after the events that constitute the

charged crime may also be relevant circumstantial evidence of intent."). We agree with the circuit court's sentiment that "[j]ust because someone is bad at their crime doesn't mean that the evidence is insufficient." We will not disturb the circuit court's factual findings on appeal.

### C. Reasonable Hypothesis of Innocence

"The 'reasonable hypothesis of innocence' concept is also well defined. The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley*, 69 Va. App. at 629 (quoting *Pijor*, 294 Va. at 512). So "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (alterations in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton*, 53 Va. App. at 572). "By finding [a] defendant guilty, therefore, the factfinder has found by a process of elimination that the evidence does not contain a reasonable theory of innocence." *Ray*, 74 Va. App. at 308 (alteration in original) (quoting *Edwards*, 68 Va. App. at 301).

By finding Warren guilty, we assume that the circuit court "found by a process of elimination that the evidence does not contain a reasonable theory of innocence." *Edwards*, 68 Va. App. at 301 (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). Additionally, the record establishes the circuit court considered Warren's hypothesis of innocence, stating, "[I]f it was Billy why would the defendant text [']I shot at her.['] That doesn't make any sense." "The rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong . . . .'" *Ervin v.*

*Commonwealth*, 57 Va. App. 495, 519 (2011) (*en banc*) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)).  Considering the totality of the evidence, the circuit court did not err in rejecting Warren's hypothesis of innocence.

III.  Warren asserts that the evidence was insufficient to support a conviction of use of a firearm in the commission of a felony, Code § 18.2-53.1.  He points to his second assignment of error, that the evidence did not establish that he was the criminal actor or that he intended to kill Lee.  Because his attempted first-degree murder conviction is in error, he argues, he cannot be convicted of using a firearm in the commission of a felony.

As articulated above, the evidence presented at trial proved that Warren was the criminal actor who shot at Lee and that he intended to kill Lee.  Because Warren used a firearm while attempting to commit murder, the evidence is sufficient to support his conviction for use of a firearm in the commission of a felony.

IV.  Warren also asserts that the evidence was insufficient to convict him of maliciously shooting into an occupied dwelling because the evidence failed to establish that he was the criminal actor and that he *endangered* the life of another.

Code § 18.2-279 provides,

> If any person maliciously discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons, or maliciously shoots at, . . . any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony.

In *Dowdy v. Commonwealth*, 220 Va. 114 (1979), the Virginia Supreme Court construed the language of Code § 18.2-279 "as a legislative declaration that human lives may be endangered when a deadly weapon is maliciously discharged at or against a building occupied by people and that such conduct is felonious."  *Id.* at 117.  Thus, the Supreme Court concluded,

"this legislative determination relieves the Commonwealth of the burden of proving that human life was, in fact, endangered." *Id.* In *Dowdy*, the appellant was outside of the house when he fired a shotgun into the glass storm door of an occupied dwelling. *Id.* at 115.[5]

Warren argues, however, that the issue presented in *Dowdy* was actually whether any lives were "in peril," which he asserts pertains to the second clause of Code § 18.2-279 proscribing a malicious shooting at an occupied building. Warren appears to argue that Code § 18.2-279 is composed of two clauses with separate showings of risk to the dwelling's occupants. He argues the first clause of Code § 18.2-279, under which he was charged and convicted, requires the Commonwealth to prove he discharged a firearm "in such a manner *as to endanger* [Lee's] life." Warren reasons that "as to endanger" and "in peril" have different meanings, otherwise the words in the statute would be rendered superfluous.

The Virginia Supreme Court has made clear that in the context of shooting "within" a building, the Commonwealth need not show that "something actually happened to [the victim], or that [the victim] was struck by a bullet, or that the bullets were specifically fired in [the victim's] direction." *Kirby v. Commonwealth*, 264 Va. 440, 445 (2002) (quotations omitted) (defendant fired shots from bedroom a short distance from where victim was seated in plain view). Instead, "[a]ll the Commonwealth [is] required to show [is] that the discharge of the firearm may have put [the victim's] life in peril." *Id.*

Warren argues *Kirby* does not require a finding that the evidence was sufficient in this case because in *Kirby* the Court relied in part on the testimony of the investigating police officer, a state-certified firearms instructor, who said that the discharge of the firearm within the house with someone seated fifteen feet away is "[n]ot safe at all." *Id.* at 445-46. Warren's distinctions

---

[5] The Supreme Court held that the evidence was sufficient to support the conviction of violating Code § 18.2-279, but reversed the judgment order on that conviction for failure to instruct the jury on the elements of the offense. *Dowdy*, 220 Va. at 117.

between his case and previously decided cases construing Code § 18.2-279 are unconvincing, and the Supreme Court's interpretation of Code § 18.2-279 in *Dowdy* and *Kirby* are binding on this Court. *See Ellis v. Commonwealth*, 281 Va. 499, 506 (2011) (following rationale applied in *Dowdy* "that the legislative purpose of the statute is meant to prohibit unlawful conduct, whether malicious or merely criminally reckless, which has the potential to endanger the lives of persons inside occupied buildings"); *Meade v. Commonwealth*, 74 Va. App. 796, 811 (2022) (citing *Dowdy* and *Ellis* for statutory interpretation of Code § 18.2-279, specifically that it is a general intent offense); *Strickland v. Commonwealth*, 16 Va. App. 180, 182 (1993) (finding evidence sufficient to prove element of endangerment within Code § 18.2-279 because of possibility that the bullet might have hit a metal part or solid object in the ceiling and ricocheted).

Here, the evidence proved that Warren was angry and he had repeatedly threatened to shoot and kill Lee. *See Kirby*, 264 Va. at 445 (noting the defendant's anger and statements prior to the shooting that victim was "going to die" in finding sufficient evidence that victim's life was in peril). Warren acted on his threats by firing a shot from the living room; the bullet traveled through the bedroom where Lee was seated on her bed. The possibility that the bullet could have hit Lee, or could have hit a solid object and ricocheted, provided the circuit court with sufficient evidence to conclude that Warren's discharge of the firearm within the confined area near Lee had the potential to endanger her life. *See id.*; *Strickland*, 16 Va. App. at 182 (holding the "sho[oting of a] gun into the ceiling while in close proximity to seventy-five persons within a confined space . . . constituted a reckless act that endangered lives").

V. Warren argues that the evidence is insufficient to prove he destroyed Lee's property. He maintains that he did not discharge the firearm and contends that whoever fired the gun likely was responsible for the damage to the residence. He concludes that the evidence was insufficient

to convict him because there is a reasonable possibility that Billy returned to the home and vandalized it.

As noted above, we find the evidence sufficient to establish that Warren was the criminal actor who discharged the firearm inside the residence. Furthermore, the record establishes that the circuit court considered Warren's hypothesis of innocence and specifically rejected it. The circuit court found that Warren was the only one in the home and therefore the only person with the opportunity to damage Lee's property. Given the totality of the circumstances, the factual conclusion of the circuit court that Warren damaged Lee's property was both reasonable and demonstrates that it rejected any other conclusion that flowed from the evidence before it.

VI. As he argues above, Warren asserts that because he was not the criminal actor, the Commonwealth failed to prove that he recklessly handled a firearm in violation of Code § 18.2-56.1(A). As addressed above, we hold that the evidence was sufficient to prove that Warren was the criminal actor who fired the gun inside Lee's residence and we do not further consider this assignment of error.

VII. Finally, Warren asserts that the evidence was insufficient to show that he was a violent felon in possession of a firearm. Warren argues that the Commonwealth failed to prove that he had a prior felony conviction—he contends that the prior felony conviction order entered into evidence was relevant but that its relevance does not equate to conclusive proof that he was, in fact, the same William Everett Warren named in the order. Also, he again repeats his argument that he was not the criminal actor who possessed a firearm.

"When the existence of a prior conviction is an element of an offense, the Commonwealth must prove the prior conviction beyond a reasonable doubt, although it may prove such a conviction 'by any competent evidence.'" *Girard v. Commonwealth*, 66 Va. App. 230, 238 (2016) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 512 (2013)). On appeal,

this Court asks whether, in the light most favorable to the Commonwealth, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Canada v. Commonwealth*, 75 Va. App. 367, 387 (2022) (quoting *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003)). "[W]hen assessing the sufficiency of the evidence on appeal, '[this Court] considers all admitted evidence . . . .'" *Id.* (quoting *Sprouse v. Commonwealth*, 53 Va. App. 488, 493 (2009)). Here, a certified conviction order from Gloucester County Circuit Court named William Everett Warren as the defendant convicted of robbery in January 2010. Of course, if this order did not reflect the appellant's prior felony conviction, it would not have been relevant to an issue in this case and thus inadmissible. Yet, this conviction order was admitted into evidence without objection by appellant and thus the circuit court was entitled to consider it as relevant to establishing that Warren was a previously convicted violent felon and consider what weight to give it, if any, in establishing a required element of the offense.

The weight accorded any admitted evidence is a matter "solely for the fact finder." *Hargrove v Commonwealth*, 53 Va. App. 545, 557 (2009). "Identity of names carries with it a presumption of identity of person, the strength of which will vary according to the circumstances." *Holmes v. Commonwealth*, 41 Va. App. 690, 692 (2003) (quoting *Cook v. Commonwealth*, 7 Va. App. 225, 230 (1988)). "The identity of names presumption is a presumption in the sense that it is a permissible inference. The fact finder is not required to draw the inference." *Id.* In this case, the circuit court drew a reasonable inference that the William Everett Warren named in the conviction order was the same William Everett Warren on trial before it. As for Warren's assertion that the prior conviction order did not "conclusively" prove that he was a prior convicted violent felon, we note that "evidence is seldom sufficient to establish any fact as demonstrated and beyond *all* doubt." *Langford v. Commonwealth*, 154 Va. 879, 888 (1930) (emphasis added).

Here, the evidence presented supports the circuit court's finding that Warren was a previously convicted violent felon and, as resolved above, that he was the criminal actor who possessed the firearm in Lee's home.

CONCLUSION

For all of the foregoing reasons, we affirm the circuit court's decision.

*Affirmed.*